**BOARD OF TRUSTEES OF THE AIR-CONDITIONING AND REFRIGERATION INDUSTRY HEALTH AND WELFARE TRUST FUND; Board of Trustees of the Airconditioning and Refrigeration Industry Retirement Trust Fund; and Board of Trustees of the Airconditioning and Refrigeration Industry Defined Contribution Retirement Plan, Plaintiffs,**

v.

**J.R.D. MECHANICAL SERVICES, INC., and James R. Divers, Defendants.**

**No. 97–3924 RAP (BQRx).**

United States District Court, C.D. California.

Dec. 9, 1999.

Kenneth J. Sackman, Steven M. Rehaut, Gilbert & Sackman, Los Angeles, CA, for Plaintiffs.

John T. Bachmayer, Torrance, CA, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAEZ, District Judge.

### I. INTRODUCTION

The Board of Trustees of the Airconditioning and Refrigeration Industry Health and Welfare Trust Fund ("Health Fund"), the Board of Trustees of the Airconditioning and Refrigeration Industry Retirement Trust Fund ("Retirement Fund"), and the Board of Trustees of the Airconditioning and Refrigeration Industry Defined Contribution Retirement Plan ("401(k) Plan") (collectively, the "Trust Funds") brought this action against J.R.D. Mechanical Services, Inc. ("J.R.D.") for violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act, 1947, as amended ("LMRA"), 29 U.S.C. § 141 *et seq.* The parties stipulated to J.R.D.'s liability for failure to pay required employer contributions, including deductions from employee wages, into the Trust Funds.

Plaintiffs also named James R. Divers ("Divers"), who started J.R.D., as a defendant.[1] Divers was J.R.D.'s President, sole officer and director, and sole owner from

---

1. Plaintiffs assert that the name J.R.D. was derived from Divers' initials.

December 1996 through at least April 1997. Plaintiffs sought to hold Divers personally liable for J.R.D.'s ERISA violations not under an alter ego theory but rather under the theory that Divers was a fiduciary under ERISA.

This matter was tried before the Court without a jury. The parties stipulated to numerous material facts. At trial, the parties only presented evidence on the extent to which Divers exercised control or authority over the delinquent plan contributions.

Having considered all of the evidence, the parties' proposed Findings of Fact and Conclusions of Law, and the parties' arguments, the Court now makes the following Findings of Fact and Conclusions of Law. The Court finds in favor of the plaintiff for the sum of $31,426.92 against defendant J.R.D. and $14,306.00 against defendant Divers.

## II.  FINDINGS OF FACT

1.  Defendant J.R.D. is a California corporation and at all material times was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and within the meaning of section 501(3) of the LMRA, 29 U.S.C. § 142(3), and was engaged in an industry affecting commerce within the meaning of section 3(11) and (12) of ERISA, 29 U.S.C. § 1002(11) and (12), and within the meaning of section 501(1) of the LMRA, 29 U.S.C. § 142(1).

2.  Along with other employers and employer associations in Southern California's air conditioning and refrigeration industry, J.R.D. entered into a written collective bargaining agreement (the "Bargaining Agreement") with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local No. 250 (AFL–CIO) ("Local 250"). The Bargaining Agreement covers employees who perform work in the air conditioning and refrigeration industry.

3.  The Bargaining Agreement establishes and renews separate agreements and declarations of trust ("Trust Agreements").

4.  Plaintiffs are third-party beneficiaries of the Bargaining Agreement.

5.  Under the Bargaining Agreement and the Trust Agreements, J.R.D. is required to forward a single combined monthly remittance report to the Trust Funds [2] and to make contributions to the Trust Funds. The Trust Funds consist of the Retirement Fund and the 401(k) Plan, which are employee pension benefit plans as defined in section 3(2) of ERISA, 29 U.S.C. § 1002(2), and the Health Fund, which is an employee welfare benefit plan as defined in section 3(1) of ERISA, 29 U.S.C. § 1002(1). The Health Fund also administers a separate account to provide employee vacation and holiday benefits (the "Vacation Account"). The Trust Funds are multiemployer plans as defined in section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A).

6.  The Trust Funds are jointly trusteed labor-management trust funds created and maintained pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

7.  The Trust Funds are administered by plaintiffs, who compose the Boards of Trustees and who are fiduciaries with respect to the Trust Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

8.  Under the Bargaining Agreement and the Trust Agreements, an employer's monthly contributions to the Retirement Fund, the 401(k) Plan, the Health Fund, and the Vacation Account are calculated separately by determining the total number of hours worked, including overtime, by each employee in that particular month,

---

**2.**  J.R.D. calculates and prepares the remittance reports. J.R.D. began submitting remittance reports and contributions to the Trust Funds when it became a signatory contractor in November 1995.

plus specified numbers of hours for holiday and vacation periods for which the employees did not work but for which they were paid, and multiplying these total hours by the hourly contribution rates set forth in the Bargaining Agreement. The monthly contributions to the Vacation Account and 401(k) Plan are established as a deduction from employee wages.

9. The Bargaining Agreement and the Trust Agreements obligate an employer to pay the reported contributions to the Trust Funds by the tenth day of the month following the month in which responsibility for such contributions is incurred. Contributions are delinquent if they are not received by the twentieth day of that month.

10. Defendants were aware of J.R.D.'s responsibility to pay timely contributions.

11. The Bargaining Agreement and the Trust Agreements provide that if contributions to the Trust Funds are delinquent, the employer shall pay liquidated damages in the amount of $100 or ten percent of the delinquent contributions, whichever sum is greater.

12. J.R.D. did not timely report or pay certain contributions to the Trust Funds for the months of March 1996 through June 1996 and August 1996 through October 1996, in the total amount of $59,445.81, broken down as follows:

| Month | Contributions Paid Untimely |
|---|---|
| March 1996 | $ 7,817.80 |
| April 1996 | $ 7,604.34 |
| May 1996 | $ 8,415.07 |
| June 1996 | $ 7,650.16 |
| August 1996 | $ 8,206.85 |
| September 1996 | $11,196.03 |
| October 1996 | $ 8,555.56 |

These contributions were eventually paid, but they were untimely.

13. For the month of December 1996, J.R.D. neither reported nor paid contributions to the Trust Funds in the amount of $4,887.63 (excluding Vacation Account and voluntary 401(k) contributions), $1,370.12 in Vacation Account contributions, and $442.25 in voluntary 401(k) contributions.

14. For the month of January 1997, J.R.D. neither reported nor paid contributions to the Trust Funds in the amount of $3,295.75 (excluding Vacation Account and voluntary 401(k) contributions), $923.32 in Vacation Account contributions, and $401.50 in voluntary 401(k) contributions.

15. For the month of February 1997, J.R.D. neither reported nor paid contributions to the Trust Funds in the amount of $3,211.85 (excluding Vacation Account and voluntary 401(k) contributions), $895.46 in Vacation Account contributions, and $410.00 in voluntary 401(k) contributions.

16. For the month of March 1997, J.R.D. neither reported nor paid contributions to the Trust Funds in the amount of $610.10 (excluding Vacation Account and voluntary 401(k) contributions), $175.80 in Vacation Account contributions, and $82.00 in voluntary 401(k) contributions.

17. The parties stipulated that the $4,700.45 owed to plaintiffs for Vacation and 401(k) contributions for the months of December 1996 through March 1997 has been paid and is not at issue in this case.

18. J.R.D.'s nonpayment of the above contributions to the Trust Funds on the dates on which such contributions were due violated the Bargaining Agreement and the Trust Agreements.

19. Divers knew that J.R.D. was obligated to but did not submit employee benefit plan contributions to the Trust Funds for the months of December 1996 through March 1997.

20. Divers knew that J.R.D. had the financial resources to pay the required employee benefit plan contributions for the months of December 1996 through March 1997.

21. Divers had both formal and practical authority within J.R.D. to direct that the December 1996 through March 1997 contributions be paid to the Trust Funds.

22. Divers decided not to transmit the December 1996 through March 1997 con-

tributions to the Trust Funds. Rather, he chose to pay creditors.

23. To verify the accuracy of the remittance reports submitted to the Trust Funds, the Trust Funds maintain an employer audit program pursuant to the Trust Agreements. As part of this audit program, the Trust Funds' auditors perform closing audits on the books and records of employers who cease to be contributing employers or who cease to conduct business.

24. In August 1998, the Trust Funds completed a closing audit of J.R.D. for the period of November 1995 through March 1997. The audit disclosed that J.R.D. owes to the Trust Funds an additional $7,562.82 in plan contributions.

### III. CONCLUSIONS OF LAW

Based on the forgoing findings of fact, the Court makes the following conclusions of law:

#### A. Jurisdiction and Venue

Jurisdiction is proper pursuant to section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and pursuant to section 301(a) of the LMRA, 29 U.S.C. § 185(a). Venue is proper pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and section 301(a) of the LMRA, 29 U.S.C. § 185(a).

#### B. J.R.D.'s Liability

ERISA requires an employer to pay multiemployer trust fund contributions in accordance with the terms and conditions of the collective bargaining agreements and the plans to which the employer is a signatory. *See* 29 U.S.C. § 1145. Trust Funds are authorized to enforce this provision. *See* 29 U.S.C. § 1132(a)(3).

Because J.R.D. is an employer under ERISA and it failed to pay the required contributions, J.R.D. violated section 1145 and its obligations to the Trust Funds under the Bargaining Agreement and the Trust Agreements. Therefore, it is liable for the following amounts.

Pursuant to the Bargaining Agreement, the Trust Agreements, 29 U.S.C. § 1132(g)(2)(A), and the undisputed facts, J.R.D. owes 12,005.33 to the Trust Funds for unpaid employee benefit plan contributions for the months of December 1996 through March 1997. J.R.D. also owes $7,562.82 for unpaid plan contributions for the audit period of November 1995 through March 1997.

ERISA provides that plans are entitled to collect interest on unpaid contributions "at the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, the record does not establish an interest rate for unpaid contributions in the plan documents. Consequently, the Court will employ the rate prescribed under 26 U.S.C. § 6621. Pursuant to section 6621, which prescribes an interest rate for underpayments of the federal short-term interest rate plus three percentage points, the Court imposes an interest rate of eight and one-quarter percent per annum, not compounded.

The parties stipulated that J.R.D. owes to the Trust Funds $2,988.22 for interest on the unpaid delinquent employee benefit plan contributions for the months of December 1996 through March 1997. J.R.D. also owes $1,725.44 for interest on the unpaid delinquent plan contributions owed for the audit period of November 1995 through March 1997.

Additionally, pursuant to the Bargaining Agreement and Trust Agreements, J.R.D. is liable for liquidated damages in the amount of ten percent of the delinquent amounts. *See* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan ... an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions]."); *see also Operat-*

*ing Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 569 (9th Cir.1984) ("It is settled Ninth Circuit law that [section 1132(g)(2) ] is mandatory and not discretionary" for violations of section 1145.). Accordingly, J.R.D. owes the Trust Funds $5,944.58 in liquidated damages for untimely-paid contributions for the months of March 1996 through June 1996 and August 1996 through October 1996, and $1,200.53 in liquidated damages for unpaid delinquent employer contributions for the months of December 1996 through March 1997.

J.R.D. must pay reasonable attorneys' fees and costs of suit for violation of section 1145. *See* 29 U.S.C. § 1132(g)(2)(D); *Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987).

## C. Divers' Liability

### 1. Fiduciary Status

■ Under ERISA, "a person is a fiduciary with respect to a plan to the extent [ ] he exercises ... any authority or control respecting management or disposition of [a plan's] assets. ..." 29 U.S.C. § 1002(21)(A). Any individual who acts as a fiduciary with respect to a plan or trust covered by ERISA can be liable for breach of fiduciary duty under ERISA. *See Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir.1991).

The Ninth Circuit liberally construes the definition of fiduciary under ERISA. *See Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir.1997); *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994). "Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is func-

tional." *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir.1997) (citations omitted).

To determine whether Divers is a fiduciary, the Court must resolve (1) whether the unpaid contributions are trust assets, and (2) whether Divers' did in fact exercise authority or control over these assets.

### a. Plan Assets

Divers argues that he is not liable for the unpaid employer contributions to the Retirement Fund and Health Fund because such contributions do not constitute assets under ERISA.[3] The Court disagrees.

■ Employee wage deductions intended as plan contributions are plan assets, regardless of whether such money is ever in fact conveyed to the plan. *See* 29 C.F.R. § 2510.3–102; *United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir.1991) (criminal action for embezzlement of plan assets); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1453 (M.D.Ala.1992); *Pension Benefit Guaranty Corp. v. Solmsen*, 671 F.Supp. 938, 945–46 (E.D.N.Y.1987).

The Court rejects defendants' contention that there is a distinction between employer contributions in the form of employee wage deductions and other employer contributions. Although the Trust Agreements do not specify that unpaid employer contributions are vested assets of the Trust Funds, such contributions, regardless if they are deducted from wages, are due and owing on the tenth day of the month following the month in which the responsibility for such contributions are incurred. (*See* Retirement Trust Fund Agreement, Art. VII, § 2; Health and Welfare Trust Agreement, Art. VII, § 2.) Inherent in the Trust Agreements is the concept that employer contributions become trust assets immediately after employees earn their wages.[4]

---

3. As the parties stipulated that money is no longer due for the Vacation Account and 401(k) Plan contributions, they are not at issue here.

4. In light of the Second Circuit's decision in *United States v. LaBarbara*, 129 F.3d 81 (2nd Cir.1997), the Court is not persuaded by the analysis utilized by several courts that em-

The Second Circuit's decision in *United States v. LaBarbara*, 129 F.3d 81 (2nd Cir.1997), supports the conclusion that unpaid employer contributions are assets. In addressing a violation of 18 U.S.C. § 664,[5] the Second Circuit held that delinquent employer contributions were plan assets. The court stated, "Once wages were paid to [union] members, [the employer] had contractual obligations to the Funds that constituted 'assets' of the Funds by any common definition. Certainly, an audit of the Funds would have to include such fixed obligations as assets." *Id.* at 88. The Second Circuit's definition of assets as including delinquent employer contributions under a criminal statute warrants the same interpretation of assets under a statute that confers only civil liability.[6]

Further, several district courts addressing facts analogous to the present case have declined to distinguish between employer contributions in the form of employee wage deductions and other employer contributions, finding both to constitute assets. *See, e.g., Board of Trustees of the Airconditioning & Refrigeration Indus. Health & Welfare Trust Fund v. J.P. Mechanical Contractors*, No. 94–1027 (C.D. Cal July 6, 1994); *Local Union No. 2 v. Industrial Surfaces, Inc.*, No. 94–0216, (N.D.N.Y. Aug. 1994) ("[C]ourts have concluded that ERISA contributions are 'assets' of the fund which vest prior to the actual transfer from the employer to the fund.").

Thus, the unpaid employer contributions are assets under ERISA.

### b. Exercise of Authority and Control Over Plan Assets

" 'Any' control over disposition of plan money makes the person who has the control a fiduciary." *IT Corp. v. General Am. Life Ins. Co.,* 107 F.3d 1415, 1421 (9th Cir.1997), *cert. denied,* 522 U.S. 1068, 118 S.Ct. 738, 139 L.Ed.2d 675 (1998). Thus, "a person with authority to direct payment of a plan's money [is] deemed a fiduciary." *Id.*

■ Divers' status as a corporate officer does not exempt him from liability. *See Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1459 (9th Cir.1995) ("This court has held corporate officers to be liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans."). Rather, he is liable because, as established by the factual findings, he exercised authority and control over the management and disposition of the Trust Funds' assets. *See Parker v. Bain,* 68 F.3d 1131, 1140 (9th Cir.1995) (finding individual who was company Vice President and majority owner to be a fiduciary because he ordered employees to withdraw plan assets to deposit into the corporation's general account); *Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988) (holding that employee who helped manage the business was a fiduciary under ERISA because he withdrew

---

ployer contributions are assets only if the contracts state that such contributions are "vested" in or "due and owing" the Trust Funds. *See, e.g., Galgay v. Gangloff,* 677 F.Supp. 295, 301–02 (M.D.Pa.1987), *aff'd,* 932 F.2d 959 (3rd Cir.1991) (relying on the language of the Wage Agreement to determine what constituted plan assets because ERISA does not define assets); *Young v. West Coast Indus. Relations Ass'n, Inc.,* 763 F.Supp. 64 (D.Del.1991), *aff'd,* 961 F.2d 1570 (3rd Cir. 1992).

5. Section 664 reads:
   Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any

of the . . . assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

6. The Court's analysis of this issue is also supported by *Health Cost Controls v. Bichanich.* 968 F.Supp. 396 (N.D.Ill.1997). In *Bichanich,* a Welfare and Benefit Plan sought reimbursement of funds through a subrogation claim. The court held that the money owed to the plan constituted a plan asset. The court explained, "[b]y definition, an asset is anything of value to the Plan." *Id.* at 399.

plan assets and placed them in the company's account to cover "necessary operating expenses"); *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir.1997) (holding that individual who paid company creditors instead of forwarding assets to the trust funds was a fiduciary); *Connors v. Paybra Mining Co.*, 807 F.Supp. 1242, 1246 (S.D.W.Va.1992) (concluding that company officers and directors were fiduciaries because they made "personal, conscious choices" to use withheld employee contributions to pay company expenses); *PMTA–ILA Containerization Fund v. Rose*, No. 94–5635, 1995 WL 461269, *5 (E.D.Pa. Aug.2, 1995) ("Courts have consistently held that employers who exercise discretionary control over funds that are designated for deposit into an ERISA fund qualify as fiduciaries.").

Because Divers exercised authority and control over plan assets, he is a fiduciary under ERISA. This conclusion is consistent with Congress' intent in enacting ERISA. Congress "intended that the term fiduciary should not be defined solely by reference to a particular formal title such as trustee." *Galgay v. Gangloff*, 677 F.Supp. 295, 302 (M.D.Pa.1987), *aff'd*, 932 F.2d 959 (3rd. Cir.1991). "[B]ecause ERISA is a remedial statute, it should be liberally construed in favor of protecting participants in employee benefit plans." *Id.*

### 2. Breach of Fiduciary Duty

Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to [them]." 29 U.S.C. § 1104(a)(1). Thus, ERISA prohibits a fiduciary from dealing "with the assets of the Plan in his own interest and for his own account." 29 U.S.C. § 1106(b)(1).

The Ninth Circuit liberally construes this provision to protect plan participants and beneficiaries. *See Acosta v. Pacific Enters.*, 950 F.2d 611, 620 (9th Cir.1991). "If a fiduciary uses plan assets to satisfy other business obligations, he violates this duty." *PMTA–ILA Containerization Fund v. Rose*, No. 94–5635, 1995 WL 461269, *5 (E.D.Pa. Aug.2, 1995); *see also Connors v. Paybra Mining Co.*, 807 F.Supp. 1242, 1246 (S.D.W.Va.1992). Because Divers chose to pay creditors rather than pay the required contributions to the Trust Funds for the period of December 1996 through March 1997, he breached his fiduciary duty.

### 3. Liability

Under ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary. . . ." 29 U.S.C. § 1109(a).

■ Because Divers was a fiduciary under ERISA and he breached his duty, he is personally liable for the unpaid contributions. As explained by the district court in *Galgay v. Gangloff*, this Court's holding "exposes [Divers] to potential liability only for any delinquent contributions on [his] part since [he] is a fiduciary only to the extent that he ha[d] authority or control over [the] pension plan's assets." 677 F.Supp. 295, 302 (1987), *aff'd*, 932 F.2d 959 (3rd Cir.1991).[7]

### D. Judgment

Accordingly, the Court awards Judgment in favor of plaintiffs against defendants J.R.D. and Divers as follows:

1. J.R.D. is liable to plaintiffs for $31,426.92, consisting of (a) $5,944.58 in liquidated damages on the delayed contri-

---

7. Because the Court finds Divers liable under section 1109, it need not reach the issue of whether Divers could be civilly liable under 18 U.S.C. § 664.

butions for the months of March 1996 through June 1996 and August 1996 through October of 1996; (b) the audit amount of $7,562.82; (c) $1,725.44 for interest thereon; (d) $12,005.33 for delinquent contributions for December of 1996 through March of 1997; (e) $1,200.53 in liquidated damages thereon; and (f) $2,988.22 in interest thereon.

2. Divers is liable to plaintiffs for $14,306.00, consisting of (a) $12,005.33 for the delinquent contributions for December of 1996 through March of 1997; and (b) $2,300.67 for interest thereon.

3. With respect to plaintiffs' claim for attorneys' fees, plaintiffs shall have thirty days from entry of judgment to file a motion for an award of reasonable attorneys' fees against one or both defendants. Any such motion shall be well documented regarding the amount of time spent, how the time was spent, and expenses incurred in pursuit of this litigation.

IT IS SO ORDERED.