**NATIONAL MANAGEMENT ASSOCIATION, INC.,**
Plaintiff,

v.

**TRANSAMERICA FINANCIAL RESOURCES, INC., et al.,**
Defendants.

No. C–3–01–168.

United States District Court,
S.D. Ohio,
Western Division.

March 18, 2002.

Barry Mancz, Dayton, OH, John Cloud, Dayton, OH, for plaintiff.

Walter Reynolds, Dayton, Joseph Coates, III, Fairborn, OH, Joseph Dehner, Cincinnati, OH, Matthew Blickenderfer, Cincinnati, OH, W. Michael Conway, Dayton, OH, Philip Kaufman, for defendants.

**DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR REMAND (DOC. # 9); DEFENDANT TRANSAMERICA FINANCIAL RESOURCE, INC.'S MOTION TO DISMISS (DOC. # 11) IS OVERRULED AS MOOT; CAPTIONED CAUSE IS REMANDED TO THE MONTGOMERY COUNTY COURT OF COMMON PLEAS; JUDGMENT TO ENTER ACCORDINGLY; TERMINATION ENTRY**

RICE, Chief Judge.

The instant litigation arises out of the alleged embezzlement of funds by Frank J. Skelly, Sr. ("Skelly"). According to the Complaint (Doc. # 1), Plaintiff National Management Association, Inc. ("NMA"), is a non-profit corporation. Defendant Skelly was an officer of and sole owner of Defendant Skelly, Skelly & Associates ("SSA"). Defendant Transamerica Financial Resources, Inc. ("TFR"), is a security broker-dealer, licensed to do business in Ohio. Skelly was a registered representative of TFR, and he transacted business in this State on TFR's behalf, pursuant to an Agency Agreement between them.

In 1984, Plaintiff entered into an agreement with Skelly, as an agent for SSA and TFR, for the placement of NMA's retire-

ment accounts with TFR. By virtue of the agreement, Skelly collected retirement contributions from NMA for deposit with accounts managed by TFR, until his death on May 5, 2000.

In June of 2000, NMA became aware that Skelly had allegedly collected retirement contributions intended for deposit with accounts managed by TFR, but had deposited those funds into accounts controlled by him and SSA. Skelly had concealed this alleged embezzlement by (1) disseminating statements, represented to be those of TFR, which suggested that NMA's contributions were being deposited in accordance with its agreement with TFR, and (2) by funding retirement payments following requests by NMA on behalf of its employees, so that it appeared that account balances were being properly maintained.

On March 16, 2001, Plaintiff initiated the instant litigation in the Montgomery County Court of Common Pleas, setting forth four claims for relief, to wit: (1) a state law claim against all Defendants for breach of an express and implied contract, (2) a state law claim against all Defendants for fraud, (3) a state law claim against SSA and TFR for negligent supervision of Skelly, and (4) state law claims against all Defendants for conversion, embezzlement and defalcation (Doc. # 1). Plaintiff requested damages, including treble damages, in accordance with Ohio Rev.Code § 2307.61. On April 20, 2001, TFR removed the action to this Court.[1] In its Notice of Removal, TFR alleged that the Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

Pending before the Court are Plaintiff's Motion for Remand (Doc. # 9) and Defendant TFR's Motion to Dismiss (Doc. # 11). For the reasons assigned, Plaintiff's Motion is SUSTAINED. Defendant TFR's Motion to Dismiss (Doc. # 11) is OVERRULED AS MOOT. As a means of analysis, the Court will first address set forth the standard governing Plaintiff's motion, and then turn to the merits of the parties' arguments.

 The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

 Where the Court elects to decide the jurisdictional issue on the written materials submitted, the removing Defendant is required only to make a *prima facie* case of jurisdiction. *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983). In

1. Both SSA and Skelly consented to the removal.

other words, it must only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Id.* (citations omitted). The Court must consider the pleadings and affidavits in the light most favorable to the removing Defendant. *Id.*

Plaintiff contends that this Court lacks subject matter jurisdiction over its claims, because they are not completely preempted by ERISA. There are two aspects to federal preemption of state law: conflict preemption and complete preemption. Conflict preemption arises where compliance with both federal and state law is a physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see Warner v. Ford Motor Co.,* 46 F.3d 531, 533 (6th Cir.1995)(en banc)(discussing difference between conflict and complete preemption). In contrast, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted." *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

■ In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner,* 46 F.3d at

533. If the plaintiff's claim arises under state law, the mere assertion of federal preemption as a defensive argument, *i.e.,* a conflict preemption situation, will not confer federal question subject matter jurisdiction. As stated by the Supreme Court in *Metropolitan Life Ins. Co. v. Taylor,*

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. 1542. The Supreme Court has found that Congress intended to make causes of action within the scope of 29 U.S.C. § 1132(a)(1)(B), which allows plan participants or beneficiaries to bring a civil action to recover benefits due to him under the plan, either to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan, removable to federal court under the doctrine of complete pre-emption. *Id.* at 66, 107 S.Ct. 1542. The Sixth Circuit has recognized that actions brought under §§ 1132(a)(2) and (3) are also removable. *Smith v. Provident Bank,* 170 F.3d 609 (6th Cir.1999). However, causes of action which raise conflict preemption are not removable.

> The [Supreme] Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life,* at 64, 107 S.Ct. at 1547. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create

a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner*, 46 F.3d at 534. Accordingly, this Court must determine whether Plaintiff has raised claims within the scope of Section 1132(a), which are completely preempted, or whether TFR's arguments are merely assertions of conflict preemption, which cannot form the basis for removal.[2]

Plaintiff is neither a plan beneficiary nor participant. Accordingly, subject matter jurisdiction cannot be based on § 1132(a)(1). Moreover, § 1132(a)(3) is a provision providing for injunctive relief. Plaintiff herein has sought only monetary damages. Accordingly, Defendants cannot base removal on § 1132(a)(3). *See Michigan Affiliated Healthcare Sys., Inc., v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 550 (6th Cir.1998); *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(rejecting the applicability of money damages in actions under § 1132(a)(3)). Thus, the only potential basis for removal is that Plaintiff has brought claims for breach of fiduciary duty, in accordance with 29 U.S.C. § 1109.

29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."[3] In its Memorandum in Opposition to Plaintiff's Motion for Remand (Doc. #17), TFR asserts that Plaintiff's claims fall within § 1132(a)(2), because (1) NMA is an ERISA fiduciary, (2) Plaintiff has alleged that TFR is an ERISA fiduciary, and (3) NMA's claims, as alleged, can be characterized as an action for breach of fiduciary duty.[4] As noted by Defendant, Plaintiff has not disputed that it has brought this litigation as a fiduciary of an ERISA plan. Accordingly, the Court need not address this issue.

In its Motion, Plaintiff asserts that the present action is not for the recovery of ERISA benefits, nor is it brought against

---

**2.** This Court reiterates that it is not deciding at this time whether 29 U.S.C. § 1144, ERISA's ordinary preemption clause, preempts Plaintiff's claims. The current analysis is limited to the applicability of the completion preemption doctrine. If, *arguendo*, the Court were to conclude that Plaintiff's claims are not completely preempted, the state court would be the appropriate venue for determining whether § 1144 preemption applies. *See Warner*, 46 F.3d at 535 (§ 1144(a) defense in nonremovable cases should be decided by state court); *Kalo v. Moen, Inc.*, 93 F.Supp.2d 869, 874 n. 2 (N.D.Ohio 2000).

**3.** 29 U.S.C. § 1109 provides, in pertinent part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

**4.** TFR alone has filed a memorandum in opposition to Plaintiff's Motion for Remand. Neither Skelly, Skelly, and Associates nor Mr. Skelly has opposed Plaintiff's Motion. The sole argument before the Court is that *TFR* is an ERISA fiduciary, and the claims against it are completely preempted. Accordingly, the Court makes no determination as to whether Mr. Skelly himself became an ERISA fiduciary as a result of the alleged embezzlement of fund contributions.

ERISA fiduciaries. Rather, "[t]he present action is brought by the owner of certain retirement plans against the securities dealer and its agent from whom the said owner purchased securities to fund its plans. The Defendants are not alleged to have provided investment advice. The Defendants are not alleged to have served as plan administrators. The Defendants are not alleged to have had discretionary control over the management and disposition of plan assets. The Defendants are not alleged to have performed any tasks other than ministerial, such as the receipt and processing of payments for the retirement plans in accordance with those plans." (Doc. # 9 at 11).

TFR responds that the Complaint contains allegations that it exercised control over the management and the disposition of plan assets. TFR cites to paragraphs 8, 9, 12, and 18, in which Plaintiff alleges that: (1) Skelly collected retirement contributions and "negotiated the same for deposit into accounts controlled by Skelly and SSA (¶ 8); (2) Skelly concealed the embezzlement and funded retirement payments following requests by NMA (¶ 9); (3) Skelly appropriated funds to his own purposes (¶ 12); and (4) Skelly's actions constituted conversion, embezzlement, and defalcation (¶ 18)." (Doc. # 17 at 9–10).

■ A person is a fiduciary, within the meaning of ERISA, to the extent that:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). With regard to investment advisors, an investment by an investment company does not, by itself, cause that company, its investment adviser, or its principal underwriter to be deemed to be a fiduciary. *Id.* ¶ 1002(21)(B). Likewise, with regard to securities brokers, ERISA regulations further provide that:

(1) A person who is a broker or dealer registered under the Securities Exchange Act of 1934 ... shall not be deemed to be a fiduciary ... solely because such person executes transactions for the purchase or sale of securities on behalf of such plan in the ordinary course of its business as a broker, dealer, or bank, pursuant to instructions of a fiduciary with respect to such plan, if:
(i) Neither the fiduciary nor any affiliate of such fiduciary is such broker, dealer, or bank; and
(ii) The instructions specify (A) the security to be purchased or sold, (B) a price range within which such security is to be purchased or sold, ... (C) a time span during which such security may be purchased or sold (not to exceed five business days), and (D) the minimum or maximum quantity of such security which may be purchased or sold within such price range....

29 C.F.R. § 2510.3–21(d). However, investment advisors and brokers may become fiduciaries if they exercise discretion over the decisions regarding which securities receive investments.

■ The definition of a fiduciary under ERISA is a functional one. *Smith,* 170 F.3d at 613. It includes anyone who "*ex-*

*ercises any* discretionary authority or discretionary control respecting management of [the] plan or *exercises any authority* or *control* respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (emphasis added). This language indicates that an express conferral of authority is not necessary to create fiduciary status.

Such was the conclusion reached by the Eighth Circuit in *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 626 (8th Cir.1992). In that case, the trustees of an ERISA plan filed suit against E.F. Hutton and one of its account brokers to recover losses caused by excessive buying and selling of certificates of deposit ("CD"). Although the broker was supposed to obtain the trustees' permission prior to trading and was not supposed to exercise *any* discretionary control or authority, he repeatedly traded CDS without the trustees' knowledge. He also traded stocks without permission, but attempted to obtain permission from the trustees subsequently (a fact the Eighth Circuit found irrelevant). Upon filing suit, the trustees alleged breach of fiduciary duty under ERISA, violations of the Securities and Exchange Act, and violations of the Minnesota Securities Act. The district court granted summary judgment to the defendants on the ERISA claim, ruling that they were not fiduciaries with respect to the ERISA plans. The Eighth Circuit court of appeals vacated the trial court decision, ruling that a genuine issue of material fact existed as to whether defendants constituted ERISA fiduciaries. Specifically, the Eighth Circuit took issue with the district court's conclusion that the lack of an explicit or implicit grant to discretionary control prevented the account broker from being a fiduciary. It concluded: "A person who usurps authority over a plan's assets and make decisions about the use or disposition of those assets should know they are acting as a fiduciary."

Although not addressing the issue quite so directly, the Sixth Circuit has held similarly. In *Smith, supra*, a participant who was enrolled in an ERISA profit-sharing plan brought suit against the former plan trustee (Provident), alleging the wrongful removal of shares from his account. On October 11, 1990, the plaintiff, Mr. Stauter, had instructed Provident to purchase 1,000 shares of Ameritrust Bank stock for his account. On April 30, 1991, Provident was removed as trustee for the plans, and was replaced by Society Bank. On June 7, 1991, Provident transferred the assets held in Stauter's account to Society. However, in lieu of the Ameritrust shares, Provident transferred $10,550, which constituted the purchase price less dividends that Stauter had received. Stauter later learned that on the same day that he had instructed Provident to purchase Ameritrust shares, the Catholic Diocese of Cleveland had issued an identical request. When the Diocese's accounts were transferred to Star Bank, Provident officials noticed that the shares were missing. On May 13, 1991 (after being removed as a trustee), Provident "corrected" this error by taking the shares out of Stauter's account and giving them to Star Bank, in exchange for the $10,550. Upon filing suit, Stauter set forth a number of claims against Provident, including a state law claim for breach of fiduciary duty. The district court held that it had subject matter jurisdiction upon removal, based on ERISA preemption.

On appeal to the Sixth Circuit, Stauter argued that his state law breach of fiduciary duty claim was not completely preempted, because Provident was no longer a fiduciary when it improperly removed the shares from his account. The Court of Appeals rejected this argument, stating that "Provident was an ERISA fiduciary as long as it exercised control over plan assets." 170 F.3d at 613. Although Provident was charged only with ministerial

tasks at the time of its actions, the Sixth Circuit held it was still a fiduciary, because it continued to control plan assets:

> [T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations[,] such as who is the trustee. It includes anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises *any authority or control* respecting management or disposition of its assets." Because Provident controlled plan assets, it is liable under ERISA as a fiduciary.

*Id.* (citations omitted)(emphasis in original). Accordingly, under Sixth Circuit precedent, an entity which *functions* as a ERISA fiduciary is liable as such, *regardless* of whether it has been so designated.

■ Herein, Plaintiff has alleged that Skelly, as an agent for TFR and SSA, took ERISA plan contributions and converted them for his own use.[5] TFR asserts that, because Skelly became an ERISA fiduciary as a result of those actions, TFR likewise became an ERISA fiduciary, making its removal of this action to this Court proper. In other words, TFR contends that its status as an ERISA fiduciary is due to the sole fact that its alleged agent, Skelly, has become one as a result of his alleged wrongful conduct.[6]

Regardless of whether Skelly's conduct renders him a fiduciary, numerous courts have rejected attaching ERISA fiduciary status to a principal, *i.e.*, TFR, under such circumstances. In *Hamilton v. Carell*, 243 F.3d 992 (6th Cir.2001), the Sixth Circuit recently addressed whether a corporation could be held liable for alleged breaches of fiduciary duty by an employee. Therein, the trustee of a joint employee-union employee benefits trust fund brought suit against the former fund contract administrator; his company (DMH), which he owned and operated; and DMH's comptroller, based on the comptroller's purchase of collateralized mortgage obli-

---

**5.** Plaintiff asserts that the retirement contributions are not plan assets, because they were never invested in the accounts managed by TFR. The Court disagrees. The term "plan asset" is not defined in the statute, but it is described in the regulations: "[T]he assets of a plan include amounts ... that a participant or beneficiary pays to an employer, or amounts withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3–102(a). According to Plaintiff's Complaint, retirement contributions were collected by NMA and turned over to SSA for investment. Thus, at the time Skelly allegedly embezzled those funds, they constituted withheld contributions from employees, which were separate from Plaintiff's assets. Thus, the funds were "plan assets" at the time they were allegedly stolen by Skelly. *See Voyk v. Brotherhood of Locomotive Engineers*, 198 F.3d 599, 606–7 (6th Cir.1999) ("[T]he contributions only become 'plan assets' at the time the [employer] transmits the funds to the plan administrator, as-suming that the transmission takes place within a reasonable time, but in no event later than ninety days after the funds are contributed."); *Board of Trustees of Airconditioning and Refrigeration Industry Health and Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*, 99 F.Supp.2d 1115 (C.D.Cal.1999) ("Employee wage deductions intended as plan contributions are plan assets, regardless of whether such money is ever in fact conveyed to the plan."); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1453 (M.D.Ala. 1992); *Pension Benefit Guaranty Corp. v. Solmsen*, 671 F.Supp. 938, 945–46 (E.D.N.Y. 1987).

**6.** As indicated, *supra* n. 4, Skelly has not asserted that he is a fiduciary, within the meaning of ERISA, and that the claims against him are completely preempted. Accordingly, although Skelly arguably became an ERISA fiduciary due to his conduct, the Court makes no determination as to that issue or as to whether the claims against him are completely preempted, pursuant to § 1132(a)(2) of ERISA.

gations (CMO) on behalf of the fund over a period of time. In determining that the administrator was not a fiduciary, the Court evaluated his actions, during the time in question. Although the company's comptroller, Beard, may have had a fiduciary relationship with the fund under ERISA, the Court concluded that the former administrator (Carell) himself had not exercised discretionary authority or control over the management or administration of the trust fund or the disposition of its assets with regard to the fourteen CMOs at issue. In addition, upon determining whether the company, DMH, could be held liable, the Sixth Circuit addressed that issue in terms of whether DMH, *a non-fiduciary*, could be held vicariously liable under the doctrine of *respondeat superior*. Thus, in determining whether to impose a fiduciary status, the Sixth Circuit appears to have endorsed looking to the conduct of the party at issue, not to that of its agents.

Likewise, in *Tool v. Nat'l Employee Benefit Serv., Inc.*, 957 F.Supp. 1114 (N.D.Cal.1996), two profit sharing plans brought suit against MassMutual Life Insurance Company and others, based on the theft of plan contributions. The plans were set up by National Employee Benefit Services ("NEBS"), Thomas W. Cordry, Jr., Helen Cordry, and Thomas W. Cordry III (the "Cordrys"). The contributions to the plans were delivered to NEBS and the Cordrys, who were supposed to deliver them to MassMutual. The plaintiffs alleged that NEBS and the Cordrys converted sums that were intended as contributions to either of two pension plans. *Id.* at 1116. They further alleged that (1) MassMutual breached its fiduciary duty of loyalty under the doctrine of *respondeat superior* because its agents, NEBS and the Cordrys, breached their fiduciary duties in converting funds; (2) MassMutual breached its fiduciary duty of loyalty when it failed to disclose that NEBS and Cordrys had converted funds from other plans; and (3) MassMutual breached its duty of care in failing to advise the employer and plans about the restrictions on NEBS' and Cordrys' authority which allowed them to convert the funds and in its failure to properly supervise NEBS and Cordrys. Addressing Mass Mutual's motion to dismiss, the district court concluded that MassMutual had taken no actions which would render it a fiduciary, within the meaning of ERISA. It further held that MassMutual could not be held liable, under the doctrine of *respondeat superior*, based on Ninth Circuit authority which held that section 1109(a) provides a remedy against fiduciaries alone, and that there is no basis for reading into that section a remedy against non-fiduciaries as well. *Id.* at 1120–21, citing *Nieto v. Ecker*, 845 F.2d 868 (9th Cir.1988); *see also American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, 841 F.2d 658 (5th Cir.1988) (insurance company was not an ERISA fiduciary, despite fact that its employee carried on activities as a fund administrator, because company did not give investment advise, and it lacked discretion to grant or deny benefits, adjudicate benefit claims, invest fund assets or administer the Fund; company also was not liable as a non-fiduciary, under the doctrine of *respondeat superior*, because the employee acted outside of the scope of his employment).

Herein, Plaintiff has not alleged any conduct by TFR itself that would render it a fiduciary. There is no allegation that TFR was granted authority to control the disposition or management of plan assets, nor are there allegations that it asserted such control. Moreover, there are no allegations that TFR exercised discretion over the decisions regarding which securities receive investments, or that it received rendered investment advice for a fee.

Rather, the only alleged wrongful conduct by TFR directly is that TFR was negligent in its supervision of Skelly. (Comp. ¶ 16). Although the definition of a fiduciary is interpreted broadly, Plaintiff's allegations regarding TFR's conduct do not relate to the management or administration of a plan or the exercise of control over the management or disposition of plan assets. The fact that Skelly's conduct arguably may be sufficient to render him an ERISA fiduciary is insufficient, by itself, to likewise render TFR, Skelly's principal, a co-fiduciary under ERISA. Accordingly, the Court cannot conclude, based on Defendant TFR's submission, that it is a fiduciary, within the meaning of ERISA.[7]

For the foregoing reasons, Plaintiff's Motion for Remand (Doc. # 9) is SUSTAINED. Defendant TFR's Motion to Dismiss (Doc. # 11) is OVERRULED as MOOT.

The captioned cause is remanded to the Montgomery County Court of Common Pleas from whence it cometh. Judgment is to be entered accordingly.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

7. Although the Court cannot conclude that TFR is an ERISA fiduciary, it notes that ERISA does provide certain remedies against non-fiduciaries who participate in a breach of fiduciary duty or otherwise violate the Act. However, such claims cannot be brought under § 1132(a)(2), and do not provide this Court with subject matter jurisdiction for purposes of removal.