Cadegan v. McCarron                    CV-00-540-JD   08/06/02
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Leah Cadegan, et al.

     v.                                  Civil No. 00-540-JD
                                         Opinion No. 2002 DNH 152
Joseph McCarron and
Phoenix Group Corporation


                            O R D E R


     The plaintiffs, a group of ten past or present employees of

three nursing homes in New Hampshire, bring suit against Joseph

McCarron and Phoenix Group Corporation, alleging that the

defendants breached their fiduciary duties in violation of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

1103 through § 1106.  In particular, the plaintiffs allege that

they were participants in the Oasis Healthcare Employee Group

Health Plan and that they have incurred unpaid medical bills

because the defendants failed to fund the Plan.  The plaintiffs

and defendant McCarron have filed cross motions for summary

judgment.  Default was entered as to Phoenix Group Corporation on

November 2, 2001.


                         Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Anderson, 477 U.S. at 255; Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The same standard applies when both parties move for summary judgment. See Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002). In considering cross motions for summary judgment, however, "the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997). The court must then rule on each motion separately. See Bienkowski, 285 F.3d at 140.

2

## Background

Phoenix Group Corporation formed OHI Corporation, which did business as Oasis Health Care ("Oasis"), to develop and operate long term care facilities in New England. Heartland Healthcare Corporation owned the three nursing homes where the plaintiffs worked. Heartland hired Oasis to provide management services for its facilities. Joseph McCarron was an executive vice president of Phoenix and president of Oasis.

Oasis initiated the Oasis Healthcare Employee Group Health Plan ("Plan") to provide healthcare coverage for the employees of the facilities Oasis managed, including the three nursing homes where the plaintiffs worked. The plaintiffs participated in the Plan. Oasis hired Managed Health Funding Insurance Administrators as a third-party administrator to handle claims submitted under the Plan.

McCarron established the "Insurance Bank Account" where employee and employer contributions to the Plan were deposited. That account was earmarked for Plan funds. McCarron directed and supervised billing the nursing homes, which were billed on a monthly basis, to fund the Plan. According to McCarron, each facility collected the employee contributions, which were deducted from the payroll, and held them in the facility's operating account until the facility was billed by Oasis, on a

3

monthly basis, for both the employer's contribution and the employee withholding amounts. Oasis deposited the payments from the monthly billings into the Insurance Bank Account. Each week, Oasis wire transferred the amount necessary to pay benefits from the Insurance Bank Account to the trust account operated by Managed Health Funding Insurance Administrators.

The facilities managed by Oasis began to experience financial difficulties in 1997 and 1998. According to McCarron, the facilities continued to collect their employees' payroll deductions and remit those deductions to Oasis. However, the facilities did not pay the full amounts billed for the employer contributions to the Plan and growing arrearages developed in payments due. As a result, the Plan had insufficient funding to pay health claims as they accrued.


Discussion

The plaintiffs claim that McCarron breached his fiduciary duty to them, as Plan participants, by causing, directing, or permitting "plan assets, in the form of employee contributions to the plan, to be diverted to pay for corporate debts or other purposes," in violation of 29 U.S.C. § 1103 through § 1106. 3d Am. Compl. ¶ 32 & § 33. They contend that McCarron was acting as a plan fiduciary, within the meaning of ERISA, because he

4

directed the facilities to prioritize their debt payments causing them not to pay their employer contributions to the Plan. McCarron contends that he was not acting as a plan fiduciary and that the unremitted employer contributions were not Plan assets.

"[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(A). "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998). ERISA does not itself define what constitutes an asset of the plan, and the Secretary of Labor's regulations do not address contributions made or owed by an employer.[1] See, e.g., John Hancock Mut. Life Ins. Co. v. Harris Trust & Savings Bank, 510

---

[1]In contrast, payments by a participant or beneficiary or amounts withheld from wages by an employer for contribution to a plan are defined as plan assets. See 29 C.F.R. § 2510.3-102; see also Nat'l Mgmt. Ass'n, Inc. v. Transam. Fin. Res., Inc., 197 F. Supp. 2d 1016, 1023 n.5 (S.D. Ohio 2002); Bd. of Trs. of the Air Condition & Refrigeration Indus. Health & Welfare Trust Fund v. J.R.D. Mech. Servs., 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999).

U.S. 86, 89 (1993); <u>Bannistor v. Ullman</u>, 287 F.3d 394, 402 (5th Cir. 2002).

Most of the courts that have addressed the issue of whether unremitted employer contributions to a plan are "plan assets" within the meaning of ERISA have considered the terms of the plan documents and the nature of the employer's obligation. <u>See, e.g.</u>, <u>Chicago Dist. Council of Carpenters Pension Fund v. Angulo</u>, 150 F. Supp. 2d 976, 978 (N.D. Ill. 2001); <u>Metzler v. Solidarity of Labor Orgs. Health & Welfare Fund</u>, 1998 WL 477964, at *5 (S.D.N.Y. Aug. 14, 1998); <u>In re Philpot</u>, 2002 WL 1763989, at *10 (Bankr. W.D. Ark. July 31, 2002). Unpaid employer contributions have been found to be plan assets only when the plan documents, or other related agreements, define such unpaid employer contributions as plan assets. <u>See, e.g.</u>, <u>United States v. LaBarbara</u>, 129 F.3d 81, 99 (2d Cir. 1997) (construing plan asset for purposes of 29 U.S.C. § 664); <u>Motion Picture Lab. Techs. & Film Eds. Local 780 Pension Fund v. Astro Color Labs., Inc.</u>, 2002 WL 596364, at *2 (N.D. Ill. Apr. 17, 2002) (construing § 1002(21)(A)); <u>Angulo</u>, 150 F. Supp. 2d at 978 (same); <u>Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk</u>, 140 F. Supp. 2d 447, 455-56 (E.D. Pa. 2001) (same); <u>NYSA-ILA Med. & Clinical Serv. Fund v. Catucci</u>, 60 F. Supp. 2d 194, 200-01 (S.D.N.Y. 1999) (same); <u>PMTA-ILA Containerization Fund v.</u>

6

<u>Rose</u>, 1995 WL 461269, at *4 (E.D. Pa. 1995) (same). In contrast, the Ninth Circuit has held, without considering the terms of the applicable plan, that "[u]ntil the employer pays the employer contributions over to the plan, the contributions do not become plan assets." <u>Cline v. Indus. Maintenance Eng'g & Contracting</u>, 200 F.3d 1223, 1234 (9th Cir. 2000); <u>see also</u> <u>DeFelice v. Daspin</u>, 2002 WL 1373759, *5-6 (E.D. Pa. June 25, 2002) (distinguishing delinquent employer contributions from withheld employee contributions, stating: "While there is a dearth of caselaw on the subject, it would seem as a matter of logic that fungible monies in the hands of an employer who fails to make its plan contributions is no more of a plan asset than an asset of the landlord to whom the employer owes overdue rent or an asset of a bank to which the employer owes delinquent credit line payments.").[2]

The Plan in this case names only the "Company" as a fiduciary. The plaintiff cites no explicit provisions of the

---

[2]Prior to <u>Cline</u>, a decision from the Central District of California concluded that contributions "regardless if they are deducted from wages" are plan assets because "[i]nherent in the Trust Agreements is the concept that employer contributions become trust assets immediately after employees earn their wages." <u>J.R.D. Mech. Servs.</u>, 99 F. Supp. 2d at 1120. That conclusion is in doubt in light of the Ninth Circuit's holding in <u>Cline</u>. <u>See, e.g.</u>, <u>Motion Picture</u>, 2002 WL 596364, at *2; <u>Angulo</u>, 150 F. Supp. 2d at 978.

Plan or other agreements that define unpaid employer contributions as assets of the Plan.  Instead, the plaintiffs rely on the funding policy stated in the Plan and a provision in the agreement between Oasis and Managed Health Funding Insurance Administrators.

With respect to the funding policy, the Plan states that "in some cases" both the employee and the employer contribute to the Plan and that as to those contributions, the "Company acts as trustee and deposits the funds to a bank account which the Claim Payment Administrator uses for the exclusive purpose of providing benefits to participants and the beneficiaries."  Plan at 70.  Nothing in that provision establishes that unpaid employer contributions are Plan assets or obligates the employers to make contributions so as to vest the unpaid contributions in the Plan.  Cf. e.g., Angulo, 150 F. Supp. 2d at 978; Lutyk, 140 F. Supp. 2d at 456; NYSA-ILA, 60 F. Supp. 2d at 200-01; Metzler, 1998 WL 477964, at *6.

In the agreement between Oasis and Managed Health Funding Insurance Administrators Administration, Oasis agreed to wire transfer funds in "the amount of the weekly check register which will be faxed to Oasis Healthcare each Friday."  Although that provision required Oasis to make the wire transfer within three days of the request, the time schedule established between Oasis

8

and the administrator is not sufficient evidence that the Plan vested unpaid employer contributions in the Plan.  Therefore, that provision does not make unpaid contributions assets of the Plan.

To be entitled to summary judgment on their claim that McCarron breached his fiduciary duty, the plaintiffs must first establish that McCarron was a fiduciary within the meaning of ERISA.  See, e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc., 74 F.3d 20, 21 (1st Cir. 1996); Lutyk, 140 F. Supp. 2d at 455; Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 451 (S.D.N.Y. 2000); Tybout v. Karr Barth Pension Admin., Inc., 819 F. Supp. 371, 378 (D. Del. 1993).  As the party with the burden of proof,  the plaintiffs must show, based on the record taken in the light most favorable to McCarron, that no reasonable jury could find for the nonmoving party.  See Winnacunnet Coop. Sch. Dist. v. Nat'l Union Fire Ins. Co., 84 F.3d 32, 35 (1st Cir. 1996); see also Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).  Because the plaintiffs have not sustained their burden of proof that McCarron was a fiduciary based on a theory that unpaid employer contributions were Plan assets, they are not entitled to summary judgment on their claim of breach of fiduciary duty.

McCarron, who does not bear the burden of proof on the fiduciary issue, is entitled to summary judgment if, taking the

9

record facts in the light most favorable to the plaintiffs, no material factual dispute exists and he is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 255; Bienkowski, 285 F.3d at 140. Based on the record presented, taken in the appropriate light, no factual dispute exists as to whether McCarron was a fiduciary with respect to unpaid employer contributions. Therefore, McCarron is entitled to summary judgment in his favor on the plaintiffs' claim against him.

Although the parties do not address the question, the court also notes that whether unpaid employer contributions were assets of the Plan does not appear to be material to the plaintiffs' claims. The claims allege a breach of fiduciary duty with respect to employee contributions. As noted above, "a person is a fiduciary with respect to a plan to the extent (i) he exercises . . . any authority or control respecting management or disposition of its assets. . . ." § 1002(21)(A) (emphasis added). Even if the record facts showed that unpaid employer contributions were Plan assets, McCarron would be a fiduciary only to the extent he exercised authority or control respecting the management or disposition of employer contributions. The plaintiffs' claims, however, pertain exclusively to employee contributions not employer contributions. Therefore, alternatively, McCarron would be entitled to summary judgment

10

because, even if a dispute existed as to whether unpaid <u>employer</u> contributions were Plan assets, that issue is not material to the plaintiffs' claims.

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion for summary judgment (document no. 53) is denied. Defendant Joseph McCarron's motion for summary judgment (document no. 58) is granted.

As previously noted, a default has been entered against Phoenix Group Corporation. A hearing on damages will be scheduled before the magistrate judge.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 6, 2002

cc: Charles G. Douglas III, Esquire
    Russell F. Hilliard, Esquire

11