**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 19 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

DAVID P. COLDESINA, D.D.S.,
P.C., EMPLOYEE PROFIT SHARING
PLAN AND TRUST, a domestic trust;
DAVID P. COLDESINA, a trustee,

     Plaintiffs - Appellants,

v.

THE ESTATE OF GREG P. SIMPER;
GREYSTONE MARKETING, a Utah
corporation,

     Defendants,

TED A. MADSEN, an individual;
FLEXIBLE BENEFIT
ADMINISTRATORS, a Utah
corporation; KANSAS CITY LIFE
INSURANCE COMPANY, a Missouri
corporation; SUNSET FINANCIAL
SERVICES, INC., a Washington
corporation,

     Defendants - Appellees.

No. 04-4006

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### (D.C. No. 2:00-CV-927-DAK)

Gary R. Guelker (and Peter Stirba, on the briefs), Stirba & Associates, Salt Lake City, Utah, for Plaintiff - Appellant.

Sean D. Reyes (and Spencer A. Austin, on the brief), Parsons, Behle & Latimer, Salt Lake City, Utah, for Defendants - Appellees, Kansas City Life Insurance Company and Sunset Financial Services, Inc.

Keith A. Call (and R. Brent Stephens, with him on the brief), Snow, Christensen & Martineau, Salt Lake City, Utah, for Defendants - Appellees, Ted Madsen and Flexible Benefit Administrators, Inc.

---

Before **TACHA**, Chief Judge, **KELLY**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

## I. Introduction

This case concerns who, beyond the immediate wrong-doer, might be held responsible by an ERISA plan for a theft from that plan. Plaintiffs-Appellants, David P. Coldesina, D.D.S., P.C. Employee Profits Sharing Plan & Trust ("plan" or "the plan"), and Dr. David Coldesina, D.D.S., as plan trustee, are appealing from multiple summary judgment rulings where the district court dismissed their claims against two groups of defendants: (1) Flexible Benefits Administrators, Inc. ("Flexible Benefits") and Ted Madsen, collectively known as the accountant defendants, and (2) Kansas City Life Insurance Company ("KCL") and Sunset Financial Services, Inc. ("Sunset").

On appeal, the plan makes three arguments. First, the district court erred in

- 2 -

dismissing its ERISA claims against the accountant defendants given their status as ERISA fiduciaries, or, in the alternative, if the accountant defendants are not ERISA fiduciaries, the district court erred in dismissing its state-law claims against them based on ERISA preemption. Second, the district court erred in dismissing its state-law claims against KCL and Sunset based on ERISA preemption. Finally, the district court erred in refusing to consider Dr. Coldesina's supplemental deposition offered by the plan in opposition to KCL's and Sunset's motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and, addressing each argument in turn, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## II. Background

As this case was resolved below on summary judgment, the facts are viewed in the light most favorable to the party opposing summary judgment, here the plan. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). Viewed as such, the record reveals the following.

In the early 1980's, Dr. Coldesina established an employee benefits plan for his dental practice, and he has served as the plan's trustee since its inception. In approximately 1992, Dr. Coldesina began talking to a personal friend, Gregg Simper, about changing the plan's investment strategy, and, as a result of these

conversations, Mr. Simper became the plan's investment advisor. While advising the plan, Mr. Simper also operated his own company, Greystone Marketing, Inc., and was a general agent for KCL and a licensed broker-dealer for Sunset, an affiliate of KCL. His relationships with KCL and Sunset authorized him to market and sell the investment products of both companies, and indeed his advice to the plan was primarily, if not completely, based on these products.

As plan advisor, Mr. Simper also encouraged Dr. Coldesina to hire Ted Madsen, the sole owner and employee of Flexible Benefits, to replace the plan's then current administrator. Dr. Coldesina agreed to the change, and Flexible Benefits began assisting "in the administration of the . . . plan," and charging "administrative fees." Flexible Benefits prepared the plan's tax returns and other documents concerning plan participants' accounts and benefits, was involved in making disbursements to plan participants, drafting promissory notes for participant loans, and tracking plan loans to ensure repayment, and agreed to accept plan contributions and subsequently remit them on the plan's behalf as directed. Dr. Coldesina would write checks from the plan payable to Flexible Benefits, and then Mr. Madsen would deposit the checks into his business account on which he was the only signatory. This arrangement was adopted so that Mr. Madsen would not have to rely on Dr. Coldesina's handwritten ledger in tracking the plan's contributions.

It appears Mr. Madsen had little contact with Dr. Coldesina; as such, he interacted almost exclusively with Mr. Simper regarding plan activities and acted at Mr. Simper's direction. Initially, when Flexible Benefits started accepting plan monies into its account, Mr. Madsen would remit the plan funds payable to KCL for KCL insurance products. However, at Mr. Simper's direction, he subsequently began writing checks on behalf of the plan payable to Mr. Simper's company, Greystone Marketing, with the understanding that Mr. Simper would transfer the funds to the KCL. The explanation Mr. Simper gave for this change was that it helped him track the commissions he and his agents were earning within his marketing business, which Mr. Madsen did not challenge. Dr. Coldesina never authorized writing plan checks payable to Mr. Simper or his company, and apparently was not aware of this change.

Mr. Madsen also relied exclusively on Mr. Simper for the information he needed to prepare the plan's tax forms and annual plan participant account summaries, which Mr. Simper provided either orally or in handwritten notes. Again, Mr. Madsen never questioned Mr. Simper's informality or asked him for official verification, and he did not independently verify the information.

In 1999, becoming dissatisfied with the plan's investments, Dr. Coldesina decided to re-direct the plan's assets and asked Mr. Simper for the plan's account documentation to facilitate the change. Mr. Simper agreed to turn over the

necessary documents; however, on the day he was supposed to do so he committed suicide, leaving a note that explained how and why he had misappropriated significant sums from the plan. Dr. Coldesina subsequently discovered that Mr. Simper had stolen over $600,000 from the plan. The plan then brought suit against all the parties involved asserting an ERISA claim and various state-law claims against Mr. Simper's estate and the accountant defendants and state-law claims for negligent supervision and vicarious liability against KCL and Sunset based on their agency relationship with Mr. Simper.

The accountant defendants moved for summary judgment arguing ERISA preempted the state-law claims against them and that the ERISA claim was not proper because they were not plan fiduciaries as defined by the Act. The district court granted their motion as to the state-law claims, but denied it as to the ERISA claim. However, after the ERISA claim was set for trial, the initial judge recused himself, and the new judge allowed the parties to file cross-motions for summary judgment concerning whether the accountant defendants were ERISA fiduciaries. Upon hearing the motions, the court ruled Mr. Madsen and Flexible Benefits were not plan fiduciaries and granted summary judgment in their favor on the ERISA claim as well.

KCL and Sunset also moved for summary judgment on the state-law claims asserted against them arguing they were preempted by ERISA. The district

court again granted the motion finding that Mr. Simper's status as an ERISA fiduciary triggered the Act's preemption provisions. In so deciding, the district court refused to consider Dr. Coldesina's supplemental deposition offered by the plan suggesting as justification for the exclusion that the plan was trying to create a sham issue of fact. This appeal followed entry as final judgment.

## III. <u>Discussion</u>

As noted, we review a grant of summary judgment de novo, applying the same legal standard as the district court. <u>Willmar Elec. Serv., Inc. v. Cooke</u>, 212 F.3d 533, 535 (10th Cir. 2000). Summary judgment is only appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

### A.) <u>Flexible Benefits & Mr. Madsen (the accountant defendants)</u>

The plan asserts that the accounting defendants are fiduciaries as defined by ERISA and therefore dismissal of its ERISA claim against them was in error. Further, the plan concedes that if the accountant defendants are ERISA fiduciaries its state-law claims are preempted; however, if the accountant defendants are not deemed fiduciaries, the plan argues its state-law claims are not preempted. Whether a party is an ERISA fiduciary is a mixed question of fact and law.

Hamilton v. Carell, 243 F.3d 992, 997 (6th Cir. 2001). However, where the parties essentially agree on the underlying facts, as is the case here, the only issue before us is the district court's legal conclusion, which we review de novo. Id.; see also Allison v. Bank One-Denver, 289 F.3d 1223, 1235 n.2 (10th Cir. 2002); Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 n.5 (10th Cir. 1992).

ERISA defines "fiduciary" in reference to the functions being performed for the plan. The statute provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, in applying this definition, the court must conduct a functional analysis. See Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996). That is to say, regardless of status or title, parties are only plan fiduciaries to the extent they are performing one of the functions identified in the definition. Varity Corp. v. Howe, 516 U.S. 489, 498, 502-04 (1996); 29 C.F.R. § 2509.75-8 at D-2.

Plan management or administration confers fiduciary status only to the extent the party exercises discretionary authority or control. Discretion exists

where a party has the "power of free decision" or "individual choice."  Webster's Ninth New Collegiate Dictionary 362 (1991); Herman v. NationsBank Trust Co., 126 F.3d 1354, 1365 (11th Cir. 1997) (defining "discretion").  On the other hand, non-discretionary or ministerial functions are those that do not require individual decisionmaking.  These include tasks which by their nature are inherently ministerial, such as clerical services.  See Pohl v. Nat'l Benefits Consultants, Inc., 956 F.2d 126, 129 (7th Cir. 1992) ("[Defendant's] function under the plan was clerical, mechanical, ministerial–not discretionary.").  They also include those tasks that might otherwise require discretion but which are performed within the confines of plan policies and procedures.  IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1420 (9th Cir. 1997) (quoting 29 C.F.R. § 2509.75-8 at D-2); Useden v. Acker, 947 F.2d 1563, 1575 (11th Cir. 1991).

Discretion is conspicuously omitted from the fiduciary function of controlling plan assets.  Indeed, the statute provides that "any authority or control" over the management or disposition of plan assets is sufficient to render fiduciary status.  29 U.S.C. § 1002(21)(A)(I) (emphasis added).  As other courts have recognized, this distinction evidences Congress's intent to treat control over assets differently than control over management or administration.  Srein v. Frankford Trust Co., 323 F.3d 214, 220-21 (3d Cir. 2003);  IT Corp., 107 F.3d at

1421; FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 911 (8th Cir. 1994).[1] In Congress's judgment, and consistent with general trust law, parties controlling plan assets are <u>automatically</u> in a position of confidence by virtue of that control, and as such they are obligated to act accordingly. See FirsTier Bank, N.A., 16 F.3d at 911; S. Rep. No. 127, 93rd Cong., 2d Sess. 27, *reprinted in* 1974 U.S.C.C.A.N. 4838, 4864-65.[2]

As stated above, Mr. Madsen and Flexible Benefits prepared the plan's financial statements, received plan contributions and subsequently remitted the funds as directed by Mr. Simper, and prepared promissory notes for plan loans to participants and tracked the balances of those loans. Thus, there are two possible grounds for finding that they functioned as plan fiduciaries. First, their

---

[1] Several courts gloss over this distinction applying the discretionary language to control over assets as well as management and administration. See Herman, 126 F.3d at 1365; Confer v. Custom Eng'g Co., 952 F.2d 34, 36 (3rd Cir. 1991). However, this approach is unpersuasive as it cannot be reconciled with the clear statutory language.

[2] The Senate Report provides:

A fiduciary is one who occupies a position of confidence or trust. As defined by the amendments, a fiduciary is a person who exercises any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or who has authority or responsibility to do so. . . . The fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts.

involvement in plan administration, and second, their control over plan assets.

1.) <u>Discretionary authority over plan administration</u>

Generally, preparing plan financial documents, including tax forms, is an administrative function; however, it is also ministerial. <u>Anoka Orthopaedic Assocs., P.A. v. Lechner</u>, 910 F.2d 514, 517 (8th Cir. 1990); <u>Yeseta v. Baima</u>, 837 F.2d 380, 385 (9th Cir. 1988); 29 C.F.R. § 2509.75-8 at D-2 (preparing "reports required by government agencies" and "reports concerning participants' benefits" are ministerial tasks). That is, once the preparer has the necessary information, it is, as Dr. Coldesina admitted, "pretty much a numbers calculation." Thus, even though the accountant defendants charged "administrative fees" and said they were involved in "plan administration," they did not perform the necessary administrative functions to be considered plan fiduciaries.

2.) <u>Control over plan assets</u>

As stated above, <u>any authority or control</u> over plan assets is sufficient to render fiduciary status. As such, acting as a signatory on behalf of a plan can indicate fiduciary control. <u>See</u> <u>IT Corp.</u>, 107 F.3d at 1421-22 ("The right to write checks on plan funds is 'authority or control respecting management or disposition of [] assets.'"); <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 40 (2d Cir. 1997) (noting signatory authority in discussing fiduciary status). However, performing

this function in name only is likely insufficient.  See LoPresti, 126 F.3d at 40 (finding signatory who wrote checks on plan funds was a fiduciary while signatory who never wrote checks and was not involved in finances was not a fiduciary).

Here, the accountant defendants were signatories in practice as well as name.  Mr. Madsen received plan contribution funds from the plan, which he deposited into his business account, and then wrote checks on behalf of the plan for the amount of the contribution.  This arrangement was initially set up to facilitate better recordkeeping; however, the practical reality is that Mr. Madsen had total control over the plan's money while it was in his account.  By way of example only, though not authorized to do so, he could have withdrawn the plan's money to pay his business expenses or go on vacation, and certainly if he had done either it would have been appropriate to treat his actions as a breach of fiduciary duty.  See Olson v. E.F. Hutton & Co., Inc., 957 F.2d 622, 626 (8th Cir. 1992) ("A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets should know they are acting as a fiduciary.").

Indeed, this practical reality is precisely why control over assets is treated differently than control over management.  See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-43 (1985) ("A fair contextual reading of [ERISA]

makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets . . . ."). As a general matter, a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's bests interests rather than his own. As such, assigning fiduciary obligations serves the purposes of ERISA. Indeed, "[t]he words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with the authority to direct payment of a plan's money be deemed a fiduciary." IT Corp., 107 F.3d at 1421 (emphasis added).

The facts here are even more compelling because the account at issue belonged to the accountant defendants and not to the plan itself. In IT Corp., the court assigned fiduciary status where the party acted as a signatory on an account established and maintained by the plan, 107 F.3d at 1421, and under such circumstances, the signatory and the plan likely shared control over the assets. But here, where the plan was not affiliated with the account and had no authority to oversee its activities, it depended upon Mr. Madsen to ensure the funds were handled properly. Indeed, to say that the accountant defendants did not control the money while it was in their account is to say that no one had control during

- 13 -

that time.

In opposition, the accountant defendants argue they were not in control of the plan's assets because they were simply performing a ministerial, check-writing service. First, the dichotomy between discretionary and ministerial authority is not determinative regarding control over assets. Second, this characterization is not entirely accurate. While it is true Mr. Madsen did not have any involvement in how the plan chose to invest its assets, see Baker v. Kingsley, 387 F.3d 649, 663-64 (7th Cir. 2004), or which claims were properly payable under the plan, IT Corp, 107 F.3d at 1420, or even which of various competing creditors would be paid, LoPresti, 126 F.3d at 40, he did exercise judgment in naming the payee on the checks he wrote on behalf of the plan.

The original understanding when Mr. Madsen agreed to accept plan contributions into his business account was that he would write the plan checks payable to KCL. However, at Mr. Simper's direction, Mr. Madsen subsequently began making the checks payable to Greystone Marketing. There were never any express plan policies directing Mr. Madsen's check-writing activities, and Dr. Coldesina was unaware Mr. Madsen was writing the checks to Greystone Marketing. As such, Mr. Madsen assumed control over disposition of the funds by exercising his own judgment rather than acting at the plan's direction.

On this point, LoPresti and IT Corp. are analogous. In LoPresti, the court

held a plan administrator was a fiduciary based on his signatory status and authority to decide which creditors to pay out of the plan's assets. 126 F.3d at 40. Likewise, in IT Corp, the court held that an outside company serving as signatory and having the authority to pay claims it deemed proper under the plan was a fiduciary because it had the ability to direct the plan's assets. 107 F.3d at 1421-22. Certainly, Mr. Madsen had fewer choices in naming a payee than in these prior cases and thus exercised a lesser degree of control over disposition of the assets, but the point is he had this authority. "[A] person is a fiduciary with respect to a plan to the extent . . . [he] exercises any authority or control respecting management or disposition of its assets," 29 U.S.C. § 1002(21)(A) (emphasis added), and Mr. Madsen's actions, just like the fiduciaries in LoPresti and IT Corp., demonstrate that "as a practical matter, [he had] a substantial amount of money . . . under [his] control . . . in the form of a bank account which [he] could deplete by writing checks." IT Corp., 107 F.3d at 1421.

Mr. Madsen also argues he was not a fiduciary because he simply followed Mr. Simper's instruction in writing checks for the plan. This argument has some appeal given the close relationship the accountant defendants had with Mr. Simper concerning plan activities and their virtually non-existent interaction with the plan itself; however, it fails to recognize the realities of this case. Regardless of who the accountant defendants dealt with, they were hired by the plan, not Mr.

- 15 -

Simper, and were entrusted with the plan's money, not Mr. Simper's. They simply cannot avoid this fact by asserting that the devil made them do it. FirsTier Bank, N.A., 16 F.3d at 911. Besides, the reason Mr. Simper gave for requesting that the checks be made to Greystone Marketing rather than KCL focused on his own business interests and not the plan's interests, suggesting the instruction may not have been coming from the plan. See id. (explaining person in control of assets only entitled to comply with direction from fiduciary if it complies with duties owed to plan). This cannot be equated to obeying an established plan policy or procedure and it does not erase the fact that Mr. Madsen, not Mr. Simper, held the plan's assets in his business account of which he was the only signatory.

Flexible Benefits' involvement with plan loans is more complicated. Whereas this activity is more akin to controlling the disposition of assets than simply preparing financial documents, the current record fails to establish the accountant defendants did much more than draft loan agreements and create a paper trail. Therefore, because we conclude the accountant defendants were fiduciaries by virtue of the parties' banking arrangement, we need not decide whether these activities result in fiduciary status.

Thus, we reverse the district court regarding its dismissal of the plan's ERISA claim against the accountant defendants and affirm as to the state-law

claims.

B.) KCL & Sunset

The plan argues the district court erred in (1) granting summary judgment in favor of KCL and Sunset on its state-law negligent supervision and vicarious liability claims and (2) refusing to consider its supplemental deposition offered in opposition to summary judgment. The plan asserted these state-law claims against KCL and Sunset based on their alleged agency relationship with Mr. Simper, and the defendants moved for summary judgment arguing the claims were preempted by ERISA. Upon consideration of the motion, the district court issued a two-page decision agreeing that ERISA preempted the state-law claims as the plan was "attempting to hold [KCL and Sunset] liable for Mr. Simper's conduct under state law."

As we have previously noted, "'any court forced to enter the ERISA preemption thicket sets out on a treacherous path,'" Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1184 (10th Cir. 2003) (quoting Gonzales v. Prudential Ins. Co., 901 F.2d 446, 451-51 (5th Cir. 1990)), and this is certainly true here. To begin with, ERISA preemption is a question of law we review de novo. Kidneigh, 345 F.3d at 1184. There are two aspects of ERISA preemption: (1) "conflict preemption" and (2) remedial or "complete preemption."

ERISA's express conflict preemption provision states, "[ERISA] shall

supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan." 29 U.S.C. § 1144(a) (emphasis added); Felix v. Lucent Techs, Inc., 387 F.3d 1146, 1153-54 (10th Cir. 2004). In interpreting this language, the Supreme Court has consistently held that the Act's preemptive scope is broad. Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). However, recognizing that "relates to" cannot reasonably be applied to its logical conclusion, the Court has clarified that this language must be applied with the objectives of ERISA and the effect of the state law in mind. Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001).

Congress's primary purpose in enacting ERISA was to protect the interests of plan beneficiaries, Ingersoll-Rand Co., 498 U.S. at 137, and, in so doing, to "'minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government'" by creating a uniform regulatory scheme for employee benefits plans. N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995) (quoting Ingersoll-Rand, 498 U.S. at 142). In light of these objectives, the Tenth Circuit has recognized four categories of state laws that are preempted by ERISA:

(1) laws regulating the type of benefits or terms of ERISA plans; (2)

- 18 -

laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999). Conversely, if a state-law claim has only a "tenuous, remote, or peripheral connection" with the plan, as is true of most laws of general applicability, it is not preempted. Felix, 387 F.3d at 1154. Claims that solely impact a plan economically generally fall within this latter category. Indeed, "[a]s long as a state law does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the law has some economic impact on the plan does not require that the law be invalidated." Airparts Co. Inc., v. Custom Benefit Servs. of Austin, 28 F.3d 1062, 1065 (10th Cir. 1994) (internal quotations and citations omitted).

Identifying the relationship the state law seeks to address is also important in deciding whether conflict preemption applies. See Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain relationships . . . ."). Claims that do not "affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries" are not

preempted. Woodworker's Supply Inc., 170 F.3d at 990 (internal quotations and citations omitted). Necessarily, claims "affect[ing] the relations between one or more of these plan entities and an outside party similarly escape preemption." Id.

The second aspect of ERISA preemption relates to the Act's remedial scheme and is termed "complete preemption." In line with the purpose of creating uniform regulation, ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), is a comprehensive remedial scheme. Aetna Health Inc. v. Davila, 542 U.S. 200, __; 124 S. Ct. 2488, 2495 (2004). Indeed, the Supreme Court has stated:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § [1132(a)] of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies . . . .

Id. (internal quotations and citations omitted). As such, a claim that "duplicates, supplements, or supplants" the remedies provided by ERISA runs afoul of Congressional intent and is preempted. Id.; see also Kidneigh, 345 F.3d at 1185 (holding claim providing additional remedies conflicts with ERISA's remedial scheme and is preempted). However, a claim only falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or

the plan terms, rather than some other independent source. Aetna Health Inc., 124 S. Ct. at 2496. This is termed "complete preemption" because not only is the state-law claim preempted, it becomes a federal claim and can be the basis for removal jurisdiction. Id. at 2495-96; Felix, 387 F.3d at 1155.

With these principles in mind, we address each of the plan's claims asserted against KCL and Sunset independently.

1.) Negligent Supervision

In asserting a negligent supervision claim, a plaintiff is attempting to hold one in control of another's actions liable for the manner in which he or she exercised this control. Restatement (Second) of Agency § 213 (1958). This is direct, not derivative, liability. The controlling actor is being held responsible for his or her own supervisory behavior or the lack thereof, not the acts of the person being controlled. J.H. By and Through D.H. v. W. Valley City, 840 P.2d 115, 124 (Utah 1992) ("Regardless of whether an employer may be held liable under the doctrine of respondeat superior, an employer may be directly liable for its acts or omissions in hiring or supervising its employees.").

As such, in asserting this claim against KCL and Sunset, the plan has implicated an independent legal duty recognized in agency and tort law that arises out of agency relationships like the one alleged between the defendants and Mr. Simper. Neither the plan nor ERISA are involved. Certainly, the plan's

- 21 -

structure and administration are not being regulated, nor does the claim impact relations between plan entities as KCL and Sunset are both outside parties.

Further, unlike the cases where the existence of the plan was essential to finding liability, here any connection to the plan is fortuitous. See Ingersoll-Rand Co., 498 U.S. at 140 (state claim preempted because "in order to prevail, [the] plaintiff must plead, and the court must find, that an ERISA plan exists"); Gibson v. Prudential Ins. Co. of Am., 915 F.2d 414, 417 (9th Cir. 1990) (state claim preempted because "[t]here would be no relationship or cause of action between the [parties] without the Plan."). This claim could have been asserted just as easily if Mr. Simper, functioning as the defendants' agent, had given Dr. Coldesina personal investment advice and stolen his personal funds. This is true because the key to finding liability here is the agency relationship, not the plan. Thus, preempting this claim does not serve the purposes of ERISA. There is no risk of inconsistent obligations as it involves an area ERISA does not contemplate, and the interests of the plan beneficiaries are better served by allowing the claim to proceed, thereby increasing the plan's likelihood of recovery.

Likewise, this claim does not come within ERISA's remedial scope. The defendants have argued that, because Mr. Simper's fiduciary breach gave rise to the plan's loss and spurred the litigation, by simultaneously bringing state-law

claims against them and ERISA claims against Mr. Simper's estate, the plan is trying to supplement the remedies provided by ERISA. We disagree. While ERISA does regulate and provide remedies for fiduciary breach, the negligent supervision claim is not based on Mr. Simper's behavior. Rather, it is a direct claim based on the defendants' duty to adequately supervise their agent, which aries independently from ERISA or the plan terms.

The Southern District of Ohio has recently addressed similar facts. See Nat'l Mgmt. Ass'n, Inc. v. Transamerica Fin. Res., Inc., 197 F. Supp. 2d 1016 (S.D. Ohio 2002). There, Mr. Frank J. Skelly was a registered representative of the defendant, a security broker-dealer, and he owned his own business. He contracted with the plaintiff, a non-profit corporation, to place its retirement accounts with the defendant, and he accepted routine contributions from the plaintiff for deposit into those accounts. However, after Mr. Skelly's death it was discovered that he had embezzled a significant amount of the funds, depositing them into his personal or business accounts.

The plaintiff asserted numerous state-law claims against the defendant-broker, including negligent supervision, but the defendant moved to have the claims removed to federal court arguing ERISA applied. In considering the motion, the court found that because the defendant broker-dealer was not a plan fiduciary, even though its agent, Mr. Skelly, likely was, ERISA did not apply

to–and therefore did not preempt–the state-law claims. Practically, the claims had nothing to do with the areas ERISA meant to regulate because the only wrongful conduct alleged was the defendant's supervision of Mr. Skelly. 197 F. Supp. 2d at 1025.

Though the present case was presented in a different posture, the same reasoning applies. Without more involvement with the plan and its activities, KCL's and Sunset's actions are the subject of state agency and tort law, not ERISA. Indeed, other than being part of the factual backdrop of this case, the plan's existence is irrelevant here.

2.) Vicarious Liability

Vicarious liability is "[t]he imposition of liability on one person for the actionable conduct of another, based solely on the relationship between the two persons." Black's Law Dictionary 1566 (6th ed. 1990). Thus, by definition this is a derivative claim. For purposes of preemption, the fate of a derivative claim depends on the nature of the corresponding direct claim. See Kidneigh, 345 F.3d at 1189 (derivative state-law consortium claim based on direct ERISA claim preempted); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490-91 (7th Cir. 1996) (vicarious liability claim preempted because direct claim dealing with denial of benefits based on ERISA). So, for example, when the direct claim is based on ERISA, as in Kidneigh and Jass, any finding of derivative liability is

also dependent on the substance of ERISA, and under these circumstances, the state-law claim clearly "relates to" the plan triggering conflict preemption. However, derivative claims can also serve to provide additional remedies than those recognized by ERISA, thus falling within the scope of complete preemption.

Here, both ERISA preemption doctrines are implicated. The direct action supporting vicarious liability is an ERISA claim for breach of fiduciary duty asserted against Mr. Simper's estate. Obviously this claim regulates the relationship between plan entities, which means the derivative claim also depends on the regulation of a plan entity relationship, thus triggering ERISA conflict preemption. Regulation of fiduciary duties is also one of the primary subjects of ERISA's civil enforcement scheme, which triggers complete preemption. As previously noted, a claim that is completely preempted becomes a federal claim, but here that is not possible. The only remedies ERISA provides for breach of fiduciary duty are to hold the <u>fiduciary</u> personally liable, or to seek other appropriate equitable relief. 29 U.S.C. §§ 1109(a), 1132(a)(3). By claiming that KCL and Sunset are vicariously liable for Mr. Simper's actions, the plan is attempting to hold <u>non-fiduciaries</u> personally liable. Thus, the claim is preempted and it cannot be recast because there is no comparable federal claim.

The plan argues this is not an appropriate result because it is left without a remedy. First, given our analysis of the plan's negligent supervision claim, this is

not entirely true. But more important, the availability of a remedy under ERISA is not relevant to the preemption analysis. Cannon v. Group Health Serv. of Okla., Inc., 77 F.3d 1270, 1274 (10th Cir. 1996). As the Supreme Court recently reiterated, ERISA's remedial scheme evidences Congress's policy choices and intent to provide only the remedies it specified, AETNA Health Inc., 124 S. Ct. at 2495, and this court is not in a position to second-guess Congress simply because the facts of a particular case might be sympathetic.

3.) Supplemental Deposition

The plan's final argument is that the district court erred in refusing to consider a supplemental deposition it offered in opposition to summary judgment. However, given our disposition of the merits of the district court's ruling, it is unnecessary to address this issue.

Conclusion

Regarding the district court's grant of summary judgment in favor of defendants Ted Madsen and Flexible Benefits, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings in light of this opinion. Likewise, regarding the district court's grant of summary judgment in favor of defendants KCL and Sunset, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings in light of this opinion.