FILED
United States Court of Appeals
Tenth Circuit

January 19, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DAVID CARROLL,

Plaintiff‑Appellant,

v.

LOS ALAMOS NATIONAL
SECURITY, LLC; THE LANS
BENEFITS AND INVESTMENT
COMMITTEE,

Defendants‑Appellees.

No. 10-2090
(D.C. No. 1:08-CV-00959-JB-ACT)
(D. N.M.)

ORDER AND JUDGMENT[*]

Before **KELLY** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

David Carroll appeals the district court's grant of summary judgment in

favor of Los Alamos National Security, LLC (LANS) and the LANS Benefits and

Investment Committee on his state-law negligent misrepresentation claim.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Mr. Carroll is employed at Los Alamos National Laboratories, which was operated and managed by the University of California until LANS succeeded to those functions in 2006. When LANS took over, employees were separated from their employment with the university and were rehired by LANS. They had to choose between two new benefits and compensation packages, Total Compensation Plan 1 (TCP1) and Total Compensation Plan 2 (TCP 2). Both TCP1 and TCP2 required participants to contribute to Social Security and Medicare. As a state university employee Mr. Carroll had been exempted from making such contributions for the majority of his career, so he anticipated that he would not have enough time before retirement to accrue sufficient quarters of coverage to become eligible for Social Security payments based on his earnings record. LANS indicated to the transferring employees that reimbursement of contributions might be available where a retiree would not be eligible for Social Security benefits after retirement. The record on appeal indicates that the reimbursement program was not a term of an ERISA-governed benefits plan, but instead was a supplemental obligation assumed by LANS.

Mr. Carroll was particularly interested in whether TCP2 included the reimbursement program. A representative of LANS and/or the LANS Benefit Committee informed him that TCP2 would include participation in the reimbursement program. This assurance was incorrect, because the

2

reimbursement program was offered only to TCP1 participants. Months after Mr. Carroll elected to participate in TCP2, he learned that TCP2 participants were not eligible for the reimbursement program.

Mr. Carroll brought suit. In addition to claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, he alleged a state-law claim of negligent misrepresentation. The district court granted summary judgment to LANS and the LANS Benefit Committee on all claims. Mr. Carroll appeals only the disposition of his negligent misrepresentation claim.

## II.

"We review a grant of summary judgment do novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (quotation omitted). "When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state and reach the same decision we believe that state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship." *Lytle v. City of Haysville*, 138 F.3d 857, 868 (10th Cir. 1998).

Under New Mexico law, to recover for negligent misrepresentation, a plaintiff must show that: (1) the defendant made an untrue statement, (2) the defendant had no reasonable ground for believing that the statement made was

3

true, (3) the defendant intended the plaintiff to rely upon the statement, (4) the plaintiff did in fact rely on it, and (5) the reliance proximately caused the plaintiff damages. *See* N.M. Stat. Ann. Civil Uniform Jury Instruction 13-1632; *First Interstate Bank of Gallup v. Foutz*, 764 P.2d 1307, 1309-10 (N.M. 1988). In this case, the parties focused on reliance, causation, and damages.

The district court found that there was a genuine dispute of material fact as to reliance, but held that Mr. Carroll could not show that his reliance caused him any damages. First, the district court noted that in his deposition Mr. Carroll did not testify that he would have selected TCP1 if he had known the truth; instead, "the most he could say was that he would have much more carefully considered TCP1 if he knew that TCP2 participants would not receive Social Security/Medicare reimbursements." Aplt. App. at 226 (quotations and alterations omitted). "[H]is indecision demonstrates that, at best, he does not know if the Defendants' conduct caused him any injury other than deprivation of the right to make a fully informed choice – and possibly to still choose TCP2 even if the truth had been disclosed." *Id.* Second, the court stated that Mr. Carroll could never prove he suffered monetary damages from his selection of TCP2, because even considering the lack of reimbursement, on the whole he was significantly better off with TCP2 than he would have been with TCP1, and appellees would be entitled to offset the benefits he had received under TCP2.

On appeal, Mr. Carroll argues that the district court (1) failed to consider

4

his deposition testimony in the light most favorable to him, and instead considered it in the light most favorable to appellees; (2) evaluated damages under a "benefit-of-the-bargain" theory rather than for out-of-pocket loss, contrary to New Mexico law, and (3) considered matters preempted by ERISA when it evaluated the value of the compensation packages in considering his potential damages and when it held that appellees would be entitled to offset the benefits he received under TCP2.[*]  Because the damages arguments are dispositive of the appeal, we need not consider the first argument.

As Mr. Carroll asserts, in New Mexico "damages for negligent misrepresentation are determined by out-of-pocket loss or reliance damages." *First Interstate Bank of Gallup*, 764 P.2d at 1309.  Damages include "the difference between the value of what [the plaintiff] has received in the transaction and its purchase price or other value given for it" as well as "pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." *Id.* (quotation omitted); *see also id.* at 1310.  Mr. Carroll asserts that the court erroneously applied a benefit-of-the-bargain analysis, and instead submits that the proper damages analysis is as follows:  because he will

---

[*]     Mr. Carroll also briefly states that the district court relied on speculative, future calculations.  To the extent he intended to assert an argument based on speculation, however, his failure to include legal argument or to cite to authority results in a waiver.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

have paid about $40,500 into Social Security and Medicare before he retires, and he will receive nothing for those contributions, his out-of-pocket loss attributable to the misrepresentation is $40,500.

We agree with appellees, however, that it is Mr. Carroll who is seeking the benefit of the bargain. The transaction at issue was the decision to participate in TCP1 or in TCP2. The various components of the packages were not presented à la carte, and Mr. Carroll could not have chosen to participate in the reimbursement program alone. Rather, TCP1 offered certain benefits, and TCP2 offered other benefits. Having chosen TCP2, Mr. Carroll received benefits that would not have been available to him through TCP1. Now, he would like to stay in TCP2 and retain all of the benefits of participating in that package,[**] while also recouping his $40,500 in Social Security and Medicare contributions through the reimbursement program. That is, he seeks to gain the benefit of his bargain.

Further, we disagree with Mr. Carroll's assertion that ERISA preempts any consideration of the value of TCP1 and TCP2 to him in evaluating damages.[***] ERISA preemption is a question of law that is reviewed de novo. *David P.*

---

[**]    The second amended complaint sought enrollment in TCP1, Aplt. App. at 127, but during the litigation Mr. Carroll voluntarily dismissed that request for relief, *id.* at 142.

[***]    Relying on *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 990-92 (10th Cir. 1999), the district court held that ERISA did not preempt the negligent misrepresentation claim because the misrepresentation preceded the plans. Neither party has appealed this ruling, and therefore we address preemption only with regard to the calculation of damages.

6

*Coldesina, D.D.S., P.C., Emp. Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126, 1135 (10th Cir. 2005) (*Coldesina*).

State-law claims that "relate to" an employee benefit plan are preempted by ERISA. 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). But while this pronouncement is "clearly expansive," it is not limitless. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-62 (1995). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21; *see also N.Y. State Conf.*, 514 U.S. at 659-62. Thus, the Supreme Court has "go[ne] beyond the unhelpful text and the frustrating difficulty of defining its key term" in favor of "look[ing] instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813-14 (1997) (quotations omitted); *see also Coldesina*, 407 F.3d at 1136. Under this line of analysis,

> the Tenth Circuit has recognized four categories of state laws that are preempted by ERISA:
>
> > (1) laws regulating the type of benefits or terms of ERISA plans;
> >
> > (2) laws creating reporting, disclosure, funding or vesting

7

requirements for such plans;

(3) laws providing rules for calculating the amount of benefits to be paid under such plans; and

(4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans.

*Coldesina*, 407 F.3d at 1136.

In *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (per curiam), this court held that ERISA did not preempt a hospice's promissory estoppel claim against an insurer even though the hospice's damages were based upon the amount of potential plan benefits. "When a state law does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the law has some economic impact on the plan does not require that the law be invalidated." *Id.* at 754 (alterations and quotation omitted). "If Hospice prevails, merely because its damages would be based upon the amount of potential plan benefits does not implicate the administration of the plan, and is not consequential enough to connect the action with, or relate the action to, the plan." *Id.* at 755.

Here, the district court's actions did not implicate the structure or administration of the ERISA plans, did not affect the type of benefits provided by the plans, and did not impose rules for calculating the amount of benefits to be paid from the plans. And the claim at issue does not seek to remedy misconduct growing out the administration of the plans, given that the misrepresentation was

8

made before the plans were effective.  The court simply examined the two compensation packages, including their ERISA plan components, to evaluate whether Mr. Carroll could establish all the elements of his negligent misrepresentation claim.  These circumstances are too attenuated from accomplishing ERISA's objectives to require preemption.  *See also Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1143 (9th Cir. 2002) ("[A] claim does not 'relate to' an ERISA employee benefit plan simply because a court would refer to the plan in calculating damages."); *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1406-07 (11th Cir. 1994) ("[T]he mere fact that the plaintiffs' damages may be affected by a calculation of pension benefits is not sufficient to warrant preemption.").

The district court did not err in concluding that Mr. Carroll cannot prevail on his negligent misrepresentation claim because he suffered no damages by choosing to participate in TCP2 instead of TCP1.  The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge

9