FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 20, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ROLAND HUFF,

    Plaintiff - Appellant,

v.

BP CORPORATION NORTH AMERICA, INC.,

    Defendant - Appellee,

and

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

No. 23-5022
(D.C. No. 4:22-CV-00044-GKF-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.

_____

Roland Huff appeals the dismissal of his claims related to his term life

insurance policy brought under state law and under the Employee Retirement Income

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Security Act of 1974 (ERISA) against his former employer, BP Corporation North America, Inc. (BP).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Mr. Huff worked for BP until he retired in 1998.  While employed with BP, he enrolled in the BP Group Universal Life Plan, which provides group universal term life insurance benefits to current and former BP employees.  According to the summary plan description, Metropolitan Life Insurance Company (MetLife) served as the Plan claims administrator.  Upon his retirement, Mr. Huff elected to maintain coverage under the Plan and pay the premiums directly to MetLife.  He alleged that, until 2012, his monthly premiums were approximately $200 but that, by 2021, when he had reached the age of 78, his monthly premiums had risen to more than $1,900.

Mr. Huff sued MetLife in the Northern District of Oklahoma in *Huff v. Metropolitan Life Insurance Company*, No. 21-CV-284-CVE (*Huff I*), alleging state law causes of action including breach of contract and breach of the implied duty of good faith and fair dealing.  His complaint against MetLife also sought an "Order to Produce Documentation."  Supp. App. vol. 3 at 25.  He alleged his "expert actuary need[ed] to review [the documentation] in order to determine whether MetLife's huge premium increases [were] justified."  *Id.* at 15, ¶ 44.  On motion by MetLife under Fed. R. Civ. P. 12(b)(6), the district court dismissed *Huff I*, concluding that ERISA preempted Mr. Huff's state law claims and that he did not state a claim under ERISA. The court stated it would "allow [Mr. Huff] to file an amended complaint if he wishe[d] to allege a claim under ERISA[] and name the correct defendant as to [his] employee

2

benefit plan." Supp. App. vol. 3 at 213. But Mr. Huff did not file an amended complaint in *Huff I*, so the district court dismissed the case without prejudice under Fed. R. Civ. P. 41(b). Mr. Huff did not appeal the dismissal.

Instead, he brought a new complaint, in Oklahoma state court, against BP (*Huff II*). This complaint alleged similar causes of action under state law as the ones he brought against MetLife. BP removed the case to federal court and moved to dismiss under Fed. R. Civ. P. 12(b)(6) based on ERISA preemption. The district court granted the motion. Mr. Huff then filed an amended complaint including claims under ERISA. The amended complaint sought "answers to questions and documentation" regarding his premium increases and alleged that "[w]hen obtained, the information and documentation will be handed over for review and analysis by an expert life insurance actuary to determine whether the increases were justified, reasonable and fair . . . ." Aplt. App. vol. 1 at 60. The amended complaint also named MetLife as a defendant, but Mr. Huff did not serve MetLife with a summons. Instead, he alleged "a summons . . . will not be issued to MetLife unless and until sufficient information showing MetLife's responsibility for wrongdoing against Plaintiff is discovered as this action proceeds against BP." *Id.* n.1.

BP moved to dismiss under Fed. R. Civ. P. 12(b)(6) once again, arguing the amended complaint failed to state a claim for relief under ERISA. The district court

3

granted the motion.  Mr. Huff twice moved for reconsideration, which the district court

denied.  He never served MetLife with a summons.[1]  This appeal followed.

## DISCUSSION

"We review de novo a district court's decision on a Rule 12(b)(6) motion for

dismissal for failure to state a claim.  Under this standard, we must accept all the

well-pleaded allegations of the complaint as true and must construe them in the light

most favorable to the plaintiff."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277,

1282 (10th Cir. 2019) (italics, citation, and internal quotation marks omitted).  "[A]

complaint must contain sufficient factual matter . . . to state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted).  To meet this standard, the plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  "The plausibility standard . . . asks for more than a sheer

possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

---

[1] Mr. Huff's failure to serve MetLife with a summons does not affect the finality of the district court's dismissal for purposes of our jurisdiction under § 1291. "In evaluating finality . . . we look to the *substance* and *objective intent* of the district court's order, not just its terminology."  *Moya v. Schollenbarger*, 465 F.3d 444, 449 (10th Cir. 2006).  The district court's order of dismissal and subsequent judgment lack any indication of intent to permit a separate claim to go forward against MetLife.  Indeed, Mr. Huff pleaded he would need to discover "sufficient information showing MetLife's responsibility for wrongdoing against [him]" before he would serve MetLife.  Aplt. App vol. 1 at 60 n.1.  Because the district court dismissed the action before discovery, Mr. Huff obviously did not obtain such "sufficient information," *id*.  So, we have no trouble concluding the substance and objective intent of the district court's order was to enter final judgment completely disposing of all of Mr. Huff's claims.

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted).

Mr. Huff argues the district court erred in concluding ERISA preempted his state law claims. But the express preemption language in ERISA, 29 U.S.C. § 1144(a), which provides that it "supercede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," is "conspicuous for its breadth," utilizing "deliberately expansive language [that] was designed to establish pension plan regulation as exclusively a federal concern." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (internal quotation marks omitted). This preemption provision reaches state common law claims "if the factual basis of the cause of action involves an employee benefit plan." *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991).

Seeking to avoid this conclusion, Mr. Huff cites *Rutledge v. Pharmaceutical Care Management Association*, 141 S. Ct. 474, 481–82 (2020), for the proposition that "state law actions that are merely about money and affect costs are not preempted by ERISA." Aplt. Opening Br. at 15. But *Rutledge* does not set forth nearly so broad an exception to ERISA preemption. *Rutledge* concerned a state statute regulating cost lists by pharmacy benefit managers. *See* 141 S. Ct. at 478. Mr. Huff's claims challenge the increase in premiums under his company-furnished term life insurance plan. Their factual basis therefore clearly "involves an employee benefit plan," *Settles*, 927 F.2d at 509, so ERISA preempts his claims.

5

Mr. Huff alternatively asserts he converted his life insurance policy under the Plan from a company-sponsored employee benefit plan to an individual one between him and MetLife when he left BP's employment. This argument is flawed in three respects. First, the terms of the Plan expressly provided that an employee "cannot convert . . . coverage to individual coverage." Supp. App. vol 1 at 73. Second, ERISA reaches employee benefit plans "*established or* maintained" by employers. 29 U.S.C. § 1002(1) (emphasis added); *see also Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049 (10th Cir. 1992) ("The 'established or maintained' requirement seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the *establishment or* maintenance of the plan." (emphasis added)); *id.* at 1049 (concluding ERISA plan existed where employer "purchased basic insurance . . . for its employees, and listed insurance in its company manual as an employment benefit."). So, even if BP no longer "maintains" the Plan, it still established it. And the Plan at issue—funded by group policy number 32900-G issued by MetLife to group number 95520—has not changed since Mr. Huff enrolled in it. Third, assuming without deciding that the only parties to the Plan at the time of this suit were Mr. Huff and MetLife, the district court did not err in dismissing the claims against BP.

Mr. Huff also argues the Plan falls under ERISA's regulatory "safe harbor exemption." *See* 29 C.F.R. § 2510.3-1(j). But the safe harbor exemption requires, inter alia, that "no contributions are made by an employer or employee organization." *Id.* § 2510.3-1(j)(1). This court has previously rejected attempts like Mr. Huff's "to

sever . . . optional . . . coverage from the rest of the benefits [an employee] received through [an] employer's plan." *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997). We therefore affirm the district court's conclusion that ERISA preempted Mr. Huff's state law claims.

Mr. Huff also challenges the district court's conclusion that his amended complaint did not state a claim under ERISA. But we agree with the district court that the amended complaint violated Fed. R. Civ. P. 8's requirement that plaintiffs "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Mr. Huff's amended complaint was "thirty-five (35) pages in length and attache[d] thirteen separate exhibits, totaling forty-eight (48) pages. In both its length and form, the document [was] difficult to interpret." Aplt. App. vol. 2 at 216. It was also "rife with legal exposition, both as to what the law is and [Mr. Huff's] counsel's opinions on what the law should be" including "questions regarding the numerous exhibits attached to [Mr. Huff's] Amended Complaint and discussions of what those exhibits may or may not show." *Id.* at 217. "For this reason alone," the district court concluded the amended complaint was subject to dismissal. *Id.* The district court further concluded the amended complaint did not state a claim for misrepresentation, breach of fiduciary duty, or equitable estoppel under ERISA because it did not allege any material misrepresentation by BP with respect to Mr. Huff's premiums under the Plan.

7

Mr. Huff does not defend the intelligibility of the amended complaint in his opening brief. This alone constitutes sufficient grounds to affirm the dismissal. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 763 (10th Cir. 2020) ("If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling."). And, to the extent Mr. Huff seeks to challenge the rate increases under the Plan, his admission that he needs an expert actuary to review certain information "to determine whether the huge premium increases are justified," Aplt. App. vol. 1 at 14, ¶ 44, establishes that—as pled—the allegations in the amended complaint "are merely consistent with [BP's] liability" and therefore "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Finally, Mr. Huff argues the district court unfairly left him without a remedy through its dual conclusions that (1) ERISA preempted his state law claims and (2) he failed to plausibly state claims under ERISA in his amended complaint. But this argument has no bearing on the preemption analysis because even if ERISA provides fewer remedies than would otherwise be available under state law, its preemption provision "evidences Congress's policy choices and intent to provide only the remedies it specified, and this court is not in a position to second-guess Congress simply because the facts of a particular case might be sympathetic." *Coldesina v. Estate of Simper*, 407 F.3d 1126, 1139 (10th Cir. 2005) (citation omitted). The argument also has no bearing on the dismissal of his amended

8

complaint because the burden to plead an intelligible claim in compliance with

Fed. R. Civ. P. 8 was his, *see In re ZAGG Inc.*, 826 F.3d 1222, 1231 (10th Cir. 2016),

and he failed to meet it.[2]

**CONCLUSION**

We affirm the judgment of the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[2] Because we affirm the district court on the grounds given in its dismissal orders, we need not and do not consider BP's alternative argument that res judicata from *Huff I* barred the instant action. And because we conclude the district court did not err in dismissing Mr. Huff's complaint and amended complaint, we likewise discern no error in its denial of his two motions for reconsideration.